UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LONGACRE MASTER FUND, LTD. and
LONGACRE CAPITAL PARTNERS (QP), L.P.,

                    Plaintiffs,           10 Civ. 8024

   -against-                                AMENDED
                                        OPINION

ATS AUTOMATION TOOLING SYSTEMS INC.,

                    Defendant.

------------------------------------------X

A P P E A R A N C E S :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/11

       <u>Attorney for Plaintiffs</u>

       MARTIN EISENBERG, ESQ.
       50 Main Street, Suite 1000
       White Plains, NY  10606

       <u>Attorney for Defendant</u>

       HALPERIN BATTAGLIA RAICHT, LLP
       555 Madison Avenue, 9th Floor
       New York, NY  10022
       By:  Christopher Battaglia, Esq.
           Neal Cohen, Esq.

       CLARK HILL PLC
       151  South Old Woodward Avenue, Suite 200
       Birmingham, MI  48099
       By: Robert Gordon, Esq.

**Sweet, D.J.**

Defendant ATS Automation Tooling Systems, Inc. ("ATS" or the "Defendant") has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of Longacre Master Fund Ltd. and Longacre Capital Partners (QP), L.P. ("Longacre" or the "Plaintiffs").  Longacre has cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules on the First, Fifth and Seventh causes of action.  ATS has sought without objection to convert its 12(b)(6) motion to a motion for summary judgment.  Upon the facts and conclusions set forth below, ATS's motion for summary judgment is granted, and Longacre's cross-motion is denied.

Both parties are sophisticated and well advised, and their relationship is governed by the sale by ATS to Longacre of its creditor's claim in the bankruptcy of Delphi Automotive Services, LLC ("Delphi" or "Debtor").  At issue is the effect of certain procedures in that complicated bankruptcy under the terms of the sale and the allocation of risk there under.  What is ultimately in contention is approximately $820,000 in interest on the claim.

1

## Prior Proceedings

The Longacre complaint was brought in the Supreme Court of the State of New York, New York County and removed to this Court on October 21, 2010.

ATS moved to dismiss the complaint, and Longacre cross-moved for summary judgment on its first cause of action (alleging an impairment of the assigned claim and seeking repayment and interest), on its fifth cause of action (for breach of warranty), and on its seventh cause of action (for indemnity).

The motions were heard on February 9, 2011 and subsequently additional submissions were made with respect to the Delphi bankruptcy.

## The Facts

The parties have submitted appropriate Local Rule 56.1 statements, and the facts are not disputed except as noted below.

2

On October 8 and 14, 2005, Delphi filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") in Case No. 05-44640 (RDD) (the "Case").

On July 31, 2006, ATS filed Proof of Claim No. 15669 in the amount of $155,344.07 against Debtor, and on November 9, 2006, ATS filed Proof of Claim No. 16415 in the amount of $1,983,000.60 against Debtor, both in Bankruptcy Case No. 05-44640.  Entries from Debtors' claim registry show the status of these Proofs of Claim.

The Debtors filed their first amended joint plan of reorganization (Docket No. 11386 of the Cases, the "First Plan") and related disclosure statement on December 10, 2007.  The First Plan was confirmed on January 25, 2008.  The First Plan provided for payment in full on all unsecured claims against the Debtors.  The First Plan was not consummated because by April, 2008, the requisite investors failed to participate in a closing and to fulfill their obligations under the First Plan.

On June 1, 2009, the Debtors moved to supplement the First Plan, and such supplemented and otherwise modified plan (Docket No. 18707 in the Cases, the "Modified Plan") was approved by the Bankruptcy Court on June 30, 2009, and was consummated in early October, 2009.  The Modified Plan does not provide for paying unsecured creditors in full on their claims.

ATS and Longacre are parties to an Assignment of Claim agreement (the "Agreement") executed by ATS on December 8, 2006, and counter-signed by Longacre on December 14, 2006, the effective date of the Agreement.

Pursuant to the Agreement, ATS sold, transferred and assigned to Longacre all of ATS's right, title and interest in the claims in the amount of $2,138,334.67 (collectively the "Claim") filed in the Debtor's bankruptcy proceedings for a purchase price of $1,903,117.86 (the "Purchase Price"), an amount equal to eighty-nine (89%) percent of the $2,138,334.67 Claim amount.

The Claim is defined in section 2 of the Agreement, which provides in relevant part that:

4

The Claim is defined as, without limitation, all of Seller's right, title and interest in any Proofs of Claim related to prepetition claims of Seller; all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing; or referred to in, such claim(s) or the Proofs of Claim, but such documents are assigned solely to the extent necessary to support or enforce the Claim and shall not include any contractual rights that are not necessary to support or enforce the Claim. . . .

(Decl. of Neal Cohen of Jan. 14, 2011, Ex. 2 ¶ 2.)

Section 3 of the Agreement provides, in relevant part:

Buyers shall be deemed to be the owner of the Claim in the amount set forth in such Proof of Claim, subject to the terms of this Agreement, and shall be entitled to identify itself as the owner of the Proof of Claim on the records of the Bankruptcy Court.

(Id. at ¶ 3.)

Paragraph 6 of the Agreement contains an acknowledgement that:

(a) either party currently may have, and later may come into possession of, information relating to the Debtor that is not known to the other party and that such information may be material to Seller's decision to assign the Claim to Buyers and Buyers' decision to purchase the Claim ("Excluded Information"); (b) Seller has determined to assign the Claim and Buyers have determined to purchase the claim notwithstanding their lack of knowledge of the Excluded Information;

5

(c) Buyers shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyers with respect to the non-disclosure of the Excluded Information; and (d) Seller shall have no liability to Buyers, and Buyers waive and release any claims that they might have against Seller with respect to the non-disclosure of the Excluded Information.

Id. at ¶ 6.

Section 12 of the Agreement provides, in relevant part:

Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this assignment of claim as an unconditional assignment and the Buyers herein as the valid owner of the Claim; provided, however, that such order shall not modify or abrogate the rights and obligations of the parties under this Agreement.

(Id. at ¶ 12.)

Sections 7 and 16 of the Agreement provide, in relevant part:

7. Subject to paragraph 16 below, in the even all or any part of the Claim is . . . offset, objected to, disallowed, subordinated, in whole or in part, in the Case for any reason whatsoever, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed) . . . (collectively, an "Impairment"), Seller agrees to immediately repay, within 5 business days on demand of Buyers (which demand shall be made

6

at Buyers' sole option), an amount equal to the portion of the Minimum Claim Amount subject to the Impairment multiplied by the Purchase Rate . . ., plus interest thereon at 10% per annum from the date hereof to the date of repayment.

16. [I]n the event a possible Impairment is raised against the Claim in the Case and actually received by Buyers (a "Possible Impairment"), Buyers shall promptly notify Seller . . . . If at any time after the 180th calendar day following the day on which the Possible Impairment was filed against the Claim or otherwise formally commenced (herein, the "Limitation Day"), Seller's opposition and/or defense against the Possible Impairment has not been fully resolved and is not likely to be fully resolved within a reasonable period of time, then Seller must immediately repay an amount calculated in accordance with paragraph 7, as if there were an Impairment in respect of all or part of the Claim and Buyers had made a demand under paragraph 7. If after the Limitation Day Seller is subsequently successful (wholly or partly) in opposing or defending against such Possible Impairment, Buyers agree to promptly pay, on demand of Seller, an amount equal to the portion of the Claim subject to the Possible Impairment that was successfully opposed or defended and to which a repayment previously was made under this paragraph 16 multiplied by the Purchase Rate, plus interest thereon at 10% per annum from the date of repayment by Seller under this paragraph 16 to the date the payment is made by Buyers.

(Id. at ¶ 7, 16.)


On August 6, 2007, the Debtors filed their Preservation of Estate Claims Procedures Motion. On August 17, 2007, the Bankruptcy Court entered an Order granting that motion.

7

Unbeknownst to ATS and hundreds of other similarly-situated creditors, just prior to the expiration of the applicable limitations period, Debtor filed, under seal, adversary complaints that sought to avoid and recover alleged preferential payments made to such creditors by the Debtor in the 90 days prior to the Petition Dates.  On September 28, 2007, the Debtor filed an adversary complaint (the "Adversary Complaint") against ATS captioned as Delphi Corporation et al. v. ATS Automation Tooling Systems Inc. (In re Delphi Corporation), Adv. Proc. No. 07-02125 (Bankr. S.D.N.Y.) in the Case.

In the Adversary Complaint, Delphi alleged that:  (a) ATS received transfers from Debtor in the aggregate amount of approximately $17.3 million within the 90 days prior to the Petition Dates; (b) such transfers were avoidable under section 547 of the Bankruptcy Code; and (c) such transfers were recoverable under section 550 of the Bankruptcy Code.  ATS did not know about the Adversary Proceeding until April, 2010, after the Adversary Complaint was unsealed and served on ATS.

The Bankruptcy Court agreed to permit Delphi to file the Adversary Proceeding (and hundreds like it) under seal, and

8

to extend the period in which Delphi was required to serve the Adversary Complaint on ATS, on the rationale that such adversary proceedings were unlikely to be pursued under Delphi's First Plan of Reorganization, and that suppressing their existence from view would avoid unnecessary expenditures by Delphi and such defendants in the likely event such actions were not pursued.

Prior to service of the Adversary Complaint on ATS, on February 3, 2010, the Debtor filed the Forty-Fourth Omnibus Objection, pursuant to which Debtor "objected" to the Proofs of Claim on the basis of each being a "Preference-Related Claim." With respect to Preference-Related Claims, Debtor sought an order:

> [P]ursuant to section 502(d) [and Rule] 3007 to preserve their objections to [such claims] because they are asserted by Claimants who are defendants (each an "Avoidance Defendant") in avoidance actions arising under sections 542-545, 547-550, or 553 of the Bankruptcy Code (the "Avoidance Actions") and such Claims are potentially subject to disallowance pursuant to section 502(d) of the Bankruptcy Code[.]

(Decl. of Neal Cohen of Jan. 14, 2011, Ex. 7 ¶ 18.)

9

The Proofs of Claim were included among those Preference-Related Claims subject to this aspect of the Forty-Fourth Omnibus Objection.

On April 5, 2010, the Court entered an order (Docket No. 19770, the "Forty-Fourth Order").  The Forty-Fourth Order provides in relevant part:

> The Reorganized Debtors' objection to each Preference-Related Claim . . . pursuant to section 502(d) of the Bankruptcy Code is hereby deemed preserved pending the conclusion of the Avoidance Action related to such Preference Related Claim, subject to the rights of each holder of a Preference-Related Claim. . . . pursuant to section 502(j) of the Bankruptcy Code.

(Decl. of Neal Cohen of Jan. 14, 2011, Ex. 7 ¶ 8.)

In April, 2010, the Adversary Complaint was unsealed and served on ATS, after the failure of the First Plan in early 2008, the entry of three more service extensions orders, and the consummation of the Modified Plan (which does not provide for payment of creditors in full).

On May 14, 2010, ATS and other similarly-situated avoidance action defendants filed motions to dismiss the

10

avoidance actions (the "First Wave Motions"), including the
Adversary Proceeding.  A hearing was held before the Bankruptcy
Court on July 22, 2010.  At that hearing, the Bankruptcy Court
dismissed the avoidance complaints, including the Adversary
Complaint, without prejudice to Delphi moving for leave to amend
such complaints no later than September 7, 2010 to comply with
specific pleading standards set by the Court.  The Bankruptcy
Court's ruling was thereafter incorporated in an order dated
September 7, 2010, dismissing the Adversary Complaint without
prejudice and granting leave to file an amended complaint. (Decl.
of Neal Cohen of Jan. 14, 2011 Ex. 8.)


On September 7, 2010, the Delphi filed a Motion For
Leave To File Amended Complaints, including the complaint
against the Defendant in the Adversary Proceeding.


By correspondence dated August 25, 2010, Plaintiffs'
counsel notified Defendant's counsel that pursuant to Paragraph
16 of the Assignment Agreement, the "Possible Impairment" had
not been fully resolved by August 9, 2010 (the "Limitation Day"
- 180 days from the filing of the Objection to Claim) nor was
the Possible Impairment likely to be fully resolved within a

reasonable time and therefore the Plaintiffs were entitled to a refund of the Purchase Price plus accruing interest.

On March 30, 2011, Delphi filed a Notice of Withdrawal of Reorganized Debtors' Forty-Fourth Omnibus Claims Objection with Respect to Proofs of Claim Nos. 15669, 15670, and 16415 (Docket No. 21193), which (among other things) withdraws any reservation of Delphi's right to object under Section 502(d) of the Bankruptcy Code to the Claim sold to Plaintiffs and explicitly confirms the allowance of the Claim (comprising Claim Numbers 15669 and 16415).  On March 31, 2011, the Bankruptcy Court entered a Stipulated Order of Dismissal with Prejudice (Docket No. 46) in the Adversary Proceeding.

ATS has not remitted the refund payment demanded by Longacre prior to the withdrawal of the Forty-Fourth Omnibus Claims Objection and dismissal of the Adversary Complaint, in the amount of $2,265,929.21 calculated as follows: $2,138,334.67 x 89% (purchase rate for Claim) = $1,903,117.86 plus $762,811.35 (interest at 10% from date of Assignment Agreement:  12/18/06 to 12/16/10) for a total of $2,665,929.21. Nor has ATS paid the amount demanded by Longacre following the withdrawal and dismissal of $817,037.17 calculated as follows:

$1,903,117.21 (the Purchase Price) plus $817,037.17 (10% interest from the date of the Assignment agreement, December 14, 2011, until the allowance of the Claim on March 30, 2011) for a total of $2,720,155.53 minus $1,903,117.21 (the Purchase Price Longacre states is due back) for a final total of $817,037.17.

## The Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the question involves a contract's proper construction, "[s]ummary judgment may be granted when the provisions of a contract convey a definite and precise meaning

13

absent any ambiguity." <u>Williams & Sons Erectors, Inc. v. S.C.</u>
<u>Steel Corp.</u>, 983 F.2d 1176, 1183-84 (2d Cir. 1993) (citing
<u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428
(2d Cir. 1992); <u>Heyman v. Commerce and Indus. Ins. Co.</u>, 524 F.2d
1317, 1320 (2d Cir. 1975); <u>Painton & Co. v. Bourns, Inc.</u>, 442
F.2d 216, 233 (2d Cir. 1971)); <u>see also</u> <u>La Salle Bank Nat. Ass'n</u>
<u>v. Nomura Asset Capital Corp.</u>, 424 F.3d 195, 205 (2d Cir. 2005).
The question of whether a contract is ambiguous is a question of
law for the court to decide. <u>Law Bebenture Trust Co. of N.Y. v.</u>
<u>Maverick Tube Co.</u>, 595 F.3d 458, 465-66 (2d Cir. 2010).


**No Impairment or Possible Impairment Existed on the Claim**


The first cause of action of the Complaint alleges that
the filing of the Forty-Fourth Omnibus Objection or the Adversary
Proceeding constitutes an Impairment or possible Impairment under
the Agreement upon the grounds that the Claim has been "objected
to" or made subject to offset.  However, an Impairment, per
section 7 of the Agreement would occur if the Claim were, in fact
"offset, objected to, disallowed, subordinated, in whole or in
part in the Case for any reason whatsoever, pursuant to an order
of the Bankruptcy Court."  The Forty-Fourth Order did not do any
of these things - it preserved the Debtor's right <u>to object</u>

14

pending conclusion of the relevant Avoidance Action (presumably, the Adversary Proceeding).

A Possible Impairment, under Section 16 of the Agreement, is "a possible Impairment" that "is raised against the Claim in the Case and actually received by Buyers."  The Limitation Day, on which Longacre relied (see Compl. ¶¶ 10-12), occurs on "the 180th calendar day following the date on which the Possible Impairment was filed against the Claim or otherwise formally commenced. . ."  Id.  No section 502(d) objection has been actually raised, filed, or formally commenced against the Claim.  Further, the Adversary Proceeding having been dismissed, no vehicle exists through which such an objection could be raised, filed, or formally commenced in the future.

Moreover, as explained below, because the Agreement affected a sale and not a pure assignment of the Claim, for the reasons stated in Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.), 379 B.R. 425 (S.D.N.Y. 2007), no section 502(d) objection (even if one were to have been made) would have constituted an Impairment in the first instance.

15

Claims against a debtor in bankruptcy are freely assignable under New York law and are subject to identical principles governing assignments outside of the context of a bankruptcy proceeding. Green Point Funding, Inc. v. Jacobs (In re Jacobs), 2007 WL 4163414 (Bankr. E.D.N.Y. Nov. 21, 2007). Under New York law, an assignment of property requires a complete and unqualified transfer of the entire interest of the assignor in that property, interest or right. Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 558 (2d Cir. 1976). An assignment does not exist where only part of the assignor's interests in the property is transferred. See id. at 553; Maloney v. John Hancock Mutual Life Ins. Co., 271 F.2d 609, 614 (2d Cir. 1959). Rather, an assignment at law will stand only where there is a "'completed transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned.'" Miller, 540 F.2d at 558 (quoting Costal Commercial Corp. v. Samuel Kosoff & Sons, Inc., 10 App. Div.2d 372, 376 (N.Y. App. Div. 4th Dep't 1960)).

The Agreement here affected a sale rather than a pure assignment because, by its terms, while it transferred to Longacre many rights in the Claim, it also provided that ATS retained rights in the Claim.

16

Section 2 to the Agreement limits the rights in the Claim transferred to less than those held by ATS.  Section 2 provides that "[t]he Claim is defined as, without limitation, all of Seller's right, title and interest in any Proofs of Claim related to prepetition claims of Seller; all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing; or referred to in, such claim(s) or the Proofs of Claim, but such documents are assigned solely to the extent necessary to support or enforce the Claim. . . ." Sections 3 and 12 of the Agreement, as well as Exhibit B to the Agreement, limit the transfer of rights in the Claim to the terms of the Agreement.  Longacre does not contest that the Agreement constituted a sale, not a pure assignment, and indeed acknowledges that Plaintiffs did "not accept the risk that the Claim would be subject to an objection, although in fairness to the Defendant, the Assignment Agreement grants the Defendant a considerable opportunity to defend and fully resolve any objection to the claim."  (Pl. Mem. Of Law in Support of Cross-Mot. for Summ. J. 2.)

In Enron, 379 B.R. 425, the Honorable Schira Scheindlin concluded that section 502(d) disallowance, like section 510(c)

17

equitable subordination, is a personal disability of the entity that received the avoidable transfers, and that such a disability is transferred to a claim's transferee only through a "pure assignment" of the claim.  Enron, 379 B.R. at 439.

In Enron, Citibank lent funds to the debtors (i.e., Enron) prior to the Enron chapter 11 cases.  Id. at 428-29. Within the chapter 11 cases, Enron filed an adversary complaint against Citibank, seeking to disallow Citibank's claims against it under section 502(d) of the Bankruptcy Code because of Citibank's failure to return allegedly preferential transfers. Id. at 429.  Before such suit, Citibank had transferred certain of its claims against the debtors to a party, which then transferred such claims to Springfield.  Id. at 428-29.  Debtors then filed an adversary complaint against Springfield seeking to disallow Springfield's claims against the debtors under section 502(d) of the Bankruptcy Code because of Citibank's failure to return allegedly preferential transfers.  Id. at 429. Springfield moved to dismiss the adversary complaint on the grounds that as a matter of law section 502(d) may not be applied to claims held by claims transferees (i.e., Springfield) based solely upon the conduct of claims transferors (i.e., Citibank). Id. at 429-30.  The Bankruptcy Court denied the motion.  Id.

18

The Enron court reversed the Bankruptcy Court and held
that disallowance of claims pursuant to section 502(d) is a
personal disability of particular claimants and not an attribute
of a claim.  Id. at 439-45.  The Court noted that section 502(d)
requires disallowance of "'any claim of any entity from which
property is recoverable . . . or that is a transferee of a
transfer avoidable . . . unless such entity or transferee has
paid the amount or turned over any such property, for which such
entity or transferee is liable.'"  Id. at 443 (quoting 11 U.S.C.
§ 502(d)).  The Court found that the language and structure of
section 502(d) requires that the entity asserting the claim be
the same entity (i.e., "such entity or transferee") that is
liable for receipt of and failure to return property (e.g., a
preferential transfer).  Id. at 443.  The focus is on the
claimant and not the claim, "and leads to the inexorable
conclusion that disallowance is a personal disability of a
claimant, not an attribute of a claim."  Id.

Since section 502(d) disallowance is a personal
disability of a claim transferor which has received and refused
to return avoidable and recoverable transfers, and since such a
personal disability does not inhere in the claim itself, the

19

Court found that unless the claim transfer was done by a "pure assignment (or other basis for the claim transferee to step into the shoes of the claim transferor), as opposed to a sale of the claim, the claim in the hands of the transferee is not subject to . . . disallowance based solely on the conduct of the transferor." Id. at 439. The Enron court distinguished between an assignment and a sale, noting very different consequences for the transferee under each. Id. at 435. An assignee "'stands in the shoes of the assignor and [i]s subject to all equities against the assignor'" and "'an assignee of a claim takes with it whatever limitations it had in the hands of the assignor." Id. at 435-36 (quoting Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S., 598 F.2d 1264, 1266-67 (2d Cir. 1979)). Likewise, the Court noted that "an assignee is 'subject to all defenses that the obligor may have against the assignor, including . . . defenses . . . that relate to the assigned obligation itself, but also rights . . . [that] aris[e] out of separate matters that the obligor might have asserted against its original creditor, the assignor.'" Id. at 436, n. 55 & 56 (quoting 29 Williston on Contracts § 74:47 (4th ed. 2003)).

The foregoing does not apply to a sale that is not also an assignment. "A personal disability that has attached to a

20

creditor who transfers its claim will travel to the transferee if the claim is <u>assigned</u>, but will not travel if the claim is <u>sold</u>." <u>Id.</u> at 436 (emphasis in original) (citations omitted).  The <u>Enron</u> court remanded to the Bankruptcy Court for determination of whether Springfield received the claims by assignment or sale. <u>Id.</u> at 448-49.

Because no Impairment or Possible Impairment occurred or could have occurred on the Claim here, and based upon the documentary evidence, the First and Second Counts of the Complaint are dismissed.

**The Third Through Seventh Causes Of Action Are Dismissed**

Longacre has claimed entitlement to relief under the Third, Fourth, Fifth and Sixth Counts of the Complaint on the basis that Defendant breached certain representations and warranties as a result of the Forty-Fourth Omnibus Objection and/or the Adversary Proceeding.  The representations and warranties were made as of December 14, 2006 (the "Effective Date"), the date the Agreement was fully executed, and do not purport to serve as a guarantee of the future.

21

The Third Count alleges that ATS breached its representations and warranty that the Claim is a valid claim in at least the amount of $2,138,334.67. (See Decl. of Neal Cohen of Jan. 14, 2011, Ex. 2 at ¶ 4(a).)  To meet their burden, Longacre must factually demonstrate that the Claim was not valid as of the Effective Date.  In support of their position, Plaintiffs point to the Forty-Fourth Omnibus Objection and assert that "a claim subject to disallowance is not a valid claim."  However, the Claim never was subject to disallowance under the Forty-Fourth Omnibus Objection or Order as discussed above.  The Forty-Fourth Omnibus Order merely preserved rights. Furthermore, Plaintiffs' argument fails to recognize that a section 502(d) objection to the Claim – by its nature – does not contest the validity of the claim it seeks to disallow.  A section 502(d) objection rests simply on the allegation that the claimant owes money or other property to the debtor's estate and, therefore, that the claim should be disallowed unless and until the debt is paid by the claimant.

Because, for reasons set forth above, the Forty-Fourth Omnibus Objection is not an objection to the Claim, and because the basis for any actual section 502(d) objection has been resolved, there was no breach by ATS of any representation or

22

warranty, and the Claim is free and clear of any and all liens,
security interest, encumbrances or claims of any kind of nature
whatsoever.

The Fourth Count alleges that Defendant breached its
representation and warranty that it has no liability or
obligation related to or in connection with the Claim.  (See
Decl. of Neal Cohen of Jan. 14, 2011, Ex. 2 at ¶ 4(m).)
Plaintiffs assert that Delphi's Adversary Complaint to recover
$17.3 million constitutes a liability or obligation of Defendant
related to or in connection with the Claim.  However, even were
the Adversary Complaint to constitute a liability or obligation
of Defendant to or in connection with the Claim, any such
liability did not exist as of the Effective Date.  Nor is the
Adversary Proceeding, without more, an obligation related to the
Claim.  Instead, the Adversary Complaint seeks to recover
certain monies paid by Delphi to Defendant in the 90-day period
commencement of the Cases, while the Claim arises from goods and
services provided by Defendant to Debtor that remain unpaid.
The Enron court, in holding that disallowance is a personal
disability of particular claimants and not an attribute of a
claim, highlighted this disjunction.  See Enron, 379 B.R. at
439-45.  As such, the representation and warranty was not

23

breached, and Defendant must be granted summary judgment on the
Fourth Count.

The Fifth Count alleges that Defendant breached its
representation and warranty that the Claim is free and clear of
any and all liens, security interests, encumbrances or claims of
any kind or nature whatsoever. (See Decl. of Neal Cohen of Jan.
14, 2011, Ex. 2 at ¶ 4(j).)  To meet their burden, Longacre must
demonstrate that the Proofs of Claim were subject to a lien,
security interest, encumbrance or claim, as of the Effective
Date.  Plaintiffs' own allegations in their Cross-Motion
undercut their argument.  Plaintiffs allege that "[t]he
Objection to Claim, Objection Order and the Adversary
[Complaint] are claims and encumbrances against the Claim."  The
Adversary Complaint was served upon Defendant in April 2010,
more than three years after the Effective Date.  The Forty-
Fourth Omnibus Objection was filed on February 3, 2010, and the
Forty-Fourth Order was entered on April 5, 2010, more than three
years after the Effective Date.  The alleged encumbrances or
claims upon which Plaintiffs rely did not occur or exist as of
the Effective Date.

24

Moreover, the alleged items of breach do not fit the commonly-accepted definitions of claims or encumbrances.  The Forty-Fourth Omnibus Objection, Forty-Fourth Order, and Adversary Complaint are not claims against the Claim, such as a third party with a security interest in the Claim might be entitled to assert.  As stated above, the Adversary Proceeding does not inhere in the Claim, and the Forty-Fourth Omnibus Objection and Forty-Fourth Order cannot be said to be "claims" against the Claim.

The Sixth Count alleges that Defendant breached its representation and warranty that "to the best of Defendant's knowledge, the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or affect its validity, priority or enforceability."   To meet their burden, Longacre must demonstrate that Defendant had knowledge of one or more of the foregoing conditions, as of the Effective Date.  ATS's knowledge that it had received payments within the 90-day period prior to the Debtors' commencement of their bankruptcy cases does not

constitute knowledge of any of those conditions as of the
Effective Date.  The Claim remained a valid claim in the Cases
and has since been confirmed by the withdrawal of the Forty-
Fourth Objection and dismissal of the Adversary Proceeding with
prejudice.  Moreover, as discussed above, the Adversary
Complaint was not asserted to reduce the amount of the Claim or
affect its validity, priority or enforceability, but only sought
recovery of monies paid to Defendant and did not seek relief
against the Claim.

Paragraph 5 of the Agreement contains, in part, a
representation by Plaintiffs that "they have adequate
information concerning the financial condition of the Debtor and
the Case to make an informed independent decision regarding the
[purchase] of the Claim. . . ."  (Decl. of Neal Cohen of Jan.
14, 2011, Ex. 2 at ¶ 5.)

The Seventh Count of the Complaint alleges:

39.   Pursuant to the Assignment Agreement, ATS agreed
to indemnify Longacre from all losses, damages and
liabilities including attorneys' fees and expenses
which result from, inter alia, the Impairment of the
Claim or ATS's breach of any representation, warranty,
or covenant set forth in the Assignment Agreement
(Assignment Agreement at Para. 9).

26

40.  By virtue of the foregoing, Longacre is entitled
to reimbursement from ATS for all of Longacre's costs,
expenses and attorneys' fees arising from (i) the
Impairment of the Claim; (ii) ATS's breach of the
Assignment Agreement; and (iii) this action.

The premise of the Seventh Count is that the Agreement
entitled Longacre to indemnification for losses, damages and
liabilities including attorneys' fees and expenses which result
from Impairment of the Claim or ATS's breach of any
representation, warranty, or covenant set forth in the
Agreement.  For the reasons set forth above, no such Impairment
or breach occurred or could have occurred on account of the
Forty-Fourth Objection.

Accordingly, the remaining Counts are dismissed.

**Conclusion**

For the foregoing reasons, ATS's motion for summary
judgment is granted, and Longacre's cross-motion is denied.

**New York, NY**

~~July~~   , 2011

8/2

**ROBERT W. SWEET**

**U.S.D.J.**

27